UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OPERATING ENGINEERS LOCAL
139 HEALTH BENEFIT FUND, *et al.*,

    Plaintiffs,

 v.            Case No. 22-cv-713-pp

VISION UTILITY, INC.,

    Defendant.

**ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER DIRECTING AN AUDIT (DKT. NO. 10)**

  The plaintiffs have filed a Motion for Order Directing an Audit. Dkt. No. 10. The plaintiffs assert that without an audit they have no means to "determine, with the degree of accuracy required of them by law, the actual contributions which Defendant is required to have made to Plaintiffs and which it has failed to make." Dkt. No. 10 at 2; Dkt. No. 11 at 3, ¶5.

**I. Factual & Procedural Background**

  The defendant and plaintiff International Union of Operating Engineers Local 139 ("the Union") entered into a Collective Bargaining Agreement (CBA). Dkt. No. 12 at ¶2; Dkt. No. 11 at ¶4. The CBA required the defendant to submit "Monthly Remittance Reports" and pay fringe benefit contributions and administrative dues to the plaintiffs. Dkt. No. 10 at 2, ¶1 (citing Dkt. No. 12, ¶¶2–3; Dkt. No. 12-1; Dkt. No. 12-2; Dkt. No. 11, ¶4). Various trust agreements also give the plaintiffs "the right to an audit of the payroll books and records of

1

employers, who are signed to collective bargaining agreements with the Union," such as the defendant. Id. In her affidavit, Rita Becker, the Fund Administrator of the Union's Fringe Benefit Funds, explains these agreements and how they create the plaintiffs' right to an audit:

> In my capacity as Fund Administrator, I am familiar with the administration of multi-employer fringe benefit funds, and that the custom and usage in maintaining such funds is to require an audit of the payroll books and records of employers required to file contribution reports, in order to determine contributions due such funds. Attached as Exhibit 1 are excerpts of the Agreement and Declaration of Trust of the Health Fund. Section 4.5 provides that the Trustees may, by their respective representatives, examine the pertinent employment and payroll records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees. The Skill Fund's trust agreement has very similar provisions and those excerpts are attached as Exhibit 2. Section 3.4 also provides that the Skill Fund Trustees also may examine the employment and payroll records of each Employer at the Employer's place of business whenever necessary. The JLM Fund's trust agreement also contains similar provisions and those excerpts are attached as Exhibit 3. Section 10.1 authorizes the trustees to undergo an audit. The Pension Fund's trust agreement, relevant portions attached as Exhibit 4, provides at Section 4.4 that the Trustees may, by their respective representatives, audit and examine the pertinent employment and payroll records of each Employer. The Annuity Fund's trust agreement, relevant portions attached as Exhibit 5, provides at Article VI Section 4 that the Trustees may, by their respective representatives, audit and examine the pertinent employment and payroll records of each Employer.

Dkt. No. 11 at 2–3, ¶5 (citing Dkt. Nos. 11-1 through 11-5). The plaintiffs state that the purpose of an audit is to verify the accuracy of the employer's monthly reports and ascertain delinquent amounts, if any. Dkt. No. 10 at 2, ¶1 (citing Dkt. No. 11 at ¶5; Dkt. Nos. 11-1 through 11-5).

On June 20, 2022, the plaintiffs filed a complaint, alleging that the defendant breached its obligations to the plaintiffs by failing to submit the

required monthly remittance reports and pay monthly contributions and administrative dues from December 2021 to the present. Dkt. No. 1 at 4, ¶8; 5, ¶13; 7, ¶16. The plaintiffs also asserted that the defendant refused to provide "all required payroll records in order to perform a full and complete audit for the purpose of verifying the hours worked for months for which Defendant failed to submit Monthly Reports." Id. at 4, ¶8.

The defendant did not file an appearance and did not answer or defend, so the plaintiffs filed a request for entry of default and a supporting affidavit. Dkt. Nos. 6–7. On July 29, 2022, the clerk's office entered default against the defendant under Federal Rule of Civil Procedure 55(a): "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

## II. Motion for Order Directing Audit

The plaintiffs seek an order directing the defendant submit to an audit conducted by the plaintiffs. Dkt. No. 10. The plaintiffs contend that an audit is necessary because, as stated above, the defendant "has failed and refused to submit monthly remittance reports for the time period of December 1, 2021, to the present." Dkt. No. 11 at 3, ¶6 (Becker Aff.). Fund Administrator Becker confirms that "on several occasions, Plaintiffs' auditors requested to perform an audit of Defendant's payroll books and records for the time period of December 1, 2021, through the present." Id. The plaintiffs state that despite these repeated requests, the defendant has failed and refused to allow the plaintiffs'

3

auditors to perform a full and complete audit. Dkt. No. 10 at 2, ¶2; Dkt. No. 11 at 3, ¶6.

The plaintiffs assert that without an audit, they have no means to "determine, with the degree of accuracy required of them by law, the actual contributions which Defendant is required to have made to Plaintiffs and which it has failed to make." Dkt. No. 10 at 2-3 (quoting Dkt. No. 11 at 3, ¶5). "In other words, even though Defendant is in default, Plaintiffs cannot move for default judgment until [they have] a full and complete audit." Id. See Fed. R. Civ. P. 55(b) (indicating an entry of default judgment by the clerk requires "a sum certain or a sum that can be made certain by computation" and requires for entry by the court an accounting or determination of the amount of damages). The defendant has not filed a response to the motion.

The court will grant the plaintiffs' motion. The plaintiffs have demonstrated that the defendant and the union entered into a collective bargaining agreement whereby the defendant is obligated to make benefit contributions and administrative dues. The plaintiffs also have shown that under the various trust agreements, the plaintiffs are entitled to examine the payroll books and records of an employer who is required to make contributions to the plaintiffs (here, the defendant). The plaintiffs have demonstrated through supporting affidavits that the defendant has failed to submit monthly remittance reports for the time period beginning December 1, 2021 through the present. Finally, the plaintiffs have established that despite

4

multiple requests, the defendant has refused to allow the plaintiffs' auditors to perform a full and complete audit.

### III. Conclusion

The court **GRANTS** the plaintiffs' motion for an order directing an audit. Dkt. No. 10.

The court **ORDERS** that by the end of the day on **October 31, 2022**, the defendant must make available to the plaintiffs' auditors its full and complete payroll books and records covering the period of December 1, 2021 through the present date for which it is found that contributions or administrative dues are required to be made.

The court **ORDERS** that for all the defendant's employees covered by the collective bargaining agreement, the defendant must take account of all wages received and hours worked and determine the amount due to the plaintiffs.

Dated in Milwaukee, Wisconsin this 30th day of September, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**