UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OPERATING ENGINEERS LOCAL
139 HEALTH BENEFIT FUND,
CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS AND PARTICIPATING EMPLOYERS,
WISCONSIN OPERATING ENGINEERS SKILL
IMPROVEMENT AND APPRENTICESHIP FUND,
JOINT LABOR MANAGEMENT WORK
PRESERVATION FUND,
OPERATING ENGINEERS LOCAL 139
DEFINED CONTRIBUTION ANNUITY FUND,
TERRANCE E. MCGOWAN, JOSEPH SHELTON
and INTERNATION UNION OF
OPERATING ENGINEERS LOCAL 139,

        Plaintiffs,

        Case No. 22-cv-713-pp

  v.

VISION UTILITY, INC.,

        Defendant.

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 20) AND DISMISSING CASE

On June 20, 2022, the plaintiffs filed a complaint against Vision Utility, Inc. asserting violations of the Employee Retirement Income Security Act and the Labor-Management Relations Act. Dkt. No. 1. Despite accepting service on June 29, 2022, the defendant never has appeared. Dkt. Nos. 4, 7. On July 28, 2022, the plaintiffs filed an application for entry of default, dkt. no. 6, and the clerk entered default the next day. On August 22, 2022, the plaintiffs filed a motion for an order directing the defendant to submit to an audit so that the plaintiffs could accurately determine the amount owed by the defendant. Dkt.

1

No. 10. The court granted this request and ordered the defendant to submit to an audit and make the requested records available to the plaintiffs' auditors by October 31, 2022. Dkt. No. 15. On January 12, 2023, the plaintiffs filed a motion for default judgment. Dkt. No. 20. The court will grant that motion.

### I. Entry of Default

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). The plaintiffs sought entry of default on July 28, 2022. Dkt. No. 6. The next day, the clerk's office entered default against the defendant. The court must assure itself that the defendant was aware of the suit and still did not respond.

On June 20, 2022, the plaintiffs filed a complaint asserting the defendant violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§1132, 1145, and the Labor-Management Relations Act, 29 U.S.C. §185, by breaching its obligations to the plaintiffs under a collective bargaining agreement and various trust agreements. Dkt. No. 1 at ¶¶1, 8, 13, 16. "After commencing a federal suit, the plaintiff must ensure that each defendant receives a summons and a copy of the complaint against it." Cardenas v. City of Chi., 646 F.3d 1001, 1004 (7th Cir. 2011) (citing Fed. R. Civ. P. 4(b), (c)(1)). A plaintiff must serve the defendant "within 90 days after the complaint is filed . . . ." Fed. R. Civ. P. 4(m). A party may serve a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general

2

agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B).

On July 6, 2022, the plaintiffs filed an affidavit of service indicating that on June 29, 2022 (nine days after the plaintiffs filed the complaint), a process server had served the summons and complaint on "VISION UTILITY INC c/o Linda Turriff, C/O LEGALCORP SOLUTIONS LLC, REGISTERED AGENT: 1039 WEST MASON ST, GREEN BAY, WI 54303." Dkt. No. 4. <u>See also</u> Dkt. No. 7 at ¶3. The affidavit of service states that Turriff "affirmed her identity, confirmed she is authorized to accept legal documents on behalf of the named defendant and signed for receipt." Dkt. No. 4 at 1. The Wisconsin Department of Financial Services web site shows that LegalCorp Solutions, LLC, 1039 West Mason Street, Green Bay, WI 54303 is the registered agent for the defendant. https://www.wdfi.org/apps/CorpSearch/Details.aspx?entityID=V030692&hash=1127658839&searchFunctionID=79c15c55-55c9-4873-a57c-362f2fba2b7b&type=Simple&q=vision+utility%2c+inc. A search of that address shows that 1039 West Mason Street is a building referred to as "Executive Office Suites, LLC" that rents office space. http://www.eosuites.com/. A Linda Turriff has a LinkedIn page listing her as working at Executive Office Suites in Green Bay. The affidavit of service also explains that the process server spoke to the owner of the registered agent's office, "Mike," who instructed Linda to accept service. Dkt. No. 4 at 1-2.

On December 21, 2022, counsel for the plaintiffs notified the court that on October 3, 2022, she had mailed a copy of the court's order directing an audit to the defendant's last known business address (she enclosed the cover letter), dkt. no. 17 at 3, and had the registered agent personally served with the order on October 13, 2022 (she provided no service affidavit). Dkt. No. 17.

Counsel explained that around November 1, 2022, she received an undated, unsigned letter that stated the following:

> To whom it may concern—
>
> Vision Utility, Inc. had to permanently close its doors at the beginning of April due to very serious company theft, which was made aware to the Operating Engineers Local 139 at the time. This put the company in significant debt and there are no funds/asset.
>
> Kind regards

Id. at 5.

Generally, a defendant's answer is due within twenty-one days after it is served served with the summons and complaint, which means the defendant's deadline was July 20, 2022. Fed. R. Civ. P. 12(a)(1)(A)(i). The defendant did not make an appearance, file an answer or otherwise respond to the complaint by this date, although as noted above, someone sent the plaintiffs' counsel a letter, which counsel received in early November, indicating that the defendant had been forced to shutter and that it had no funds. No attorney has filed a notice of appearance on behalf of the defendant and the undated, unsigned letter provided by the plaintiffs' counsel appears to be the only document from the defendant (if it even came from the defendant).

The court is satisfied that the plaintiffs effectuated service, the defendant was aware of the suit and the clerk's entry of default was proper.

## II.     Plaintiff's Motion for Default Judgment (Dkt. No. 20)

After the entry of default, the plaintiff may move for default judgment under Rule 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. Quincy Bioscience, LLC v. Ellishbooks, 957 F.3d 725, 729 (7th Cir. 2020) (citing Wehrs v. Wells, 688 F.3d 886, 892 (7th Cir. 2012)). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of

4

action alleged in the complaint." e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). However, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." Id. (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Id. Rule 55(b)(2) allows the court to conduct this inquiry through hearings or referrals to determine the amount of damages. Fed. R. Civ. P. 55(b). Such proceedings are unnecessary if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." e360 Insight, 500 F.3d at 602 (quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F2d 1319, 1323 (7th Cir. 1983)). See also Wehrs, 688 F.3d at 892 ("Damages must be proved unless they are liquidated or capable of calculation.") (citation omitted).

The well-pleaded allegations of the complaint demonstrate that Local 139 and the defendant were parties to a collective bargaining agreement (CBA), as well as various trust agreements incorporated by reference in the CBA. Dkt. No. 1 at ¶¶4–5. See Dkt. Nos. 11-1–11-5, 12-1, 12-2. Under both the CBA and the trust agreements, the defendant was obligated to, among other things, make fringe benefit contributions, submit monthly reports, pay administrative costs in the event of delinquency or untimely payment of contributions and submit to an audit. Dkt. No. 1 at ¶¶4–7. The complaint alleged that the defendant breached its obligations to the plaintiffs by failing to submit the required monthly reports and failing to pay monthly contributions and administrative dues since December 2021. Id. at ¶¶8, 13, 16. The plaintiffs also asserted that the defendant refused to provide "all required payroll records in

order to perform a full and complete audit for the purpose of verifying the hours worked for months for which Defendant failed to submit Monthly Reports." Id. at ¶8.

On August 22, 2022, the plaintiffs filed a motion for an order directing the defendant to submit to an audit. Dkt. No. 10. In support, the plaintiffs provided an affidavit from Rita Becker, the Fund Administrator of the Operating Engineers Local 139 Fringe Benefit Funds. Dkt. No. 11 at ¶1. Attached to Becker's affidavit are excerpts from the various trust agreements. Dkt. Nos. 11-1–11-5. Becker stated that the defendant "failed and refused to submit monthly remittance reports for the time period of December 1, 2021, to the present," as well as failed to allow the plaintiffs' auditors to perform a complete and full audit. Dkt. No. 11 at ¶6. The plaintiffs also attached a supporting affidavit from Shaun McHugh, the Health Fund Liaison for International Union of Operating Engineers Local 139. Dkt. No. 12 at ¶1. Attached to McHugh's affidavit are copies of the National Distribution and Utilities Construction and Maintenance Agreement and the CBA. Dkt. Nos. 12-1, 12-2. McHugh's affidavit confirmed that the defendant was obligated to pay fringe benefit contributions and administrative dues to the plaintiffs under the terms of the CBA. Dkt. No. 12 at ¶3.

The court granted the plaintiff's motion for an order directing the defendant submit to an audit on September 30, 2022. Dkt. No. 15. The court found that the plaintiffs had demonstrated that the defendant and the plaintiffs had entered into a CBA whereby the defendant was obligated to make benefit contributions and administrative dues, and that under the various trust agreements, the plaintiffs were entitled to examine the defendant's payroll books and records. Id. at 4. The court also found that the plaintiffs had

demonstrated the defendant had failed to submit monthly remittance reports for the period beginning December 1, 2021. Id. The court ordered the defendant to submit to an audit by the end of the day on October 31, 2022, and required the defendant to make available to the plaintiffs' auditors its full and complete payroll books and records covering the period of December 1, 2021, through the present date for which it is found that contributions or administrative dues are required to be made. Id. at 5. The court also ordered that for all the defendant's employees covered by the CBA, the defendant must take account of all wages received and hours worked and determine the amount due to the plaintiffs. Id.

On December 15, 2022, the court issued a text-only order noting that the October 31 deadline had passed and that there had been no activity in the case since the court had issued the September 30 order granting the plaintiffs' motion for an order directing the audit. Dkt. No. 16. The court requested a status report regarding whether the audit had taken place. Id. As discussed above, the plaintiffs' attorney responded that the plaintiffs had mailed a copy of the court's September 30 order to the defendant on October 3 and had had the defendant's registered agent personally served on October 13. Dkt. No. 17 at 1. See id. at 3–4. She explained having received the unsigned, undated letter and provided a copy of the letter. Id. at 1, 4. The plaintiffs' attorney informed the court that the plaintiffs were in the process of preparing a motion for default judgment; she explained that the defendant had not complied with the court's order that it submit to an audit. Id. at 1. Counsel stated that the plaintiffs had not wanted to burden the court by requesting an order requiring the defendant to show cause why it had not complied, so instead the plaintiffs located all the members of the International Union of Operating Engineers, Local 139 who had

7

been employed by the defendant during the audit period, obtained sworn declarations from the about the dates and hours they worked and calculated the amounts owed to them based on those declarations. Id. On January 12, 2023, the plaintiffs filed the instant motion for default judgment. Dkt. No. 20.

The court finds that the well-pled allegations of the complaint and supporting exhibits establish liability. e360 Insight, 500 F.3d at 602 ("A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint."). ERISA entitles the plaintiffs to damages consisting of unpaid contributions, liquidated damages, interest and reasonable attorneys' fees and costs of the action. 29 U.S.C. §1132(g)(2). The court must conduct an inquiry to determine whether the plaintiffs have calculated the amount of damages with reasonable certainty. e360 Insight, 500 F.3d at 602. The court need not hold a hearing to determine damages if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." Id.

Despite the plaintiffs' efforts, the defendant has failed to submit to an audit of its payroll books and records. But in cases alleging ERISA violations, plaintiffs can prove definite figures through affidavits authenticating collective bargaining agreements and itemized billing statements showing attorneys' fees and costs.[1] In support of their motion for default judgment, the plaintiffs

---

[1] See, e.g., Ret. Plan for Emps. Represented by Sheet Metal Workers Local Union 18 v. MM Mech. LLC, No. 21-cv-1234-bhl, 2022 WL 1504708 (May 12, 2022); Elec. Constr. Indus. Prefunding Credit Reimbursement Plan v. Coates Elec., LLC, No. 19-cv-647-pp, 2019 WL 6069283 (E.D. Wis. Nov. 15, 2019); N. Cent. States Reg'l Council of Carpenters' Pension Fund v. Ceiling Constructors, Inc., No. 14-cv-701-bbc, 2015 WL 12585908 (W.D. Wis. Mar. 12, 2015); Wis. Sheet Metal Workers Health & Benefit Fund v. CC Installations, Inc., No. 11-C-641, 2011 WL 5404035 (E.D. Wis. Nov. 7, 2011); Trs. of Cent. Laborers' Pension, Welfare & Annuity Funds v. Robinson, No. 08-454-DRH, 2008 WL 5191761 (S.D. Ill. Dec. 11, 2008).

attached an itemization of damages and six affidavits/declarations. Dkt. Nos. 22–28. The first three declarations are from members of Local 139 who were employed by the defendant during the relevant period. Dkt. Nos. 23–25. The plaintiffs assert that based on these declarations, the fund administrator calculated the amounts of contributions, interest and delinquent payment assessments due. Dkt. No. 20 at ¶¶2–3 (citing Dkt. No. 26 at ¶¶5–6). The plaintiffs attached an affidavit showing the fund administrator's calculations. Dkt. No. 26. The plaintiffs also provided two affidavits in support of their calculation of reasonable attorneys' fees and costs. Dkt. Nos. 27–28.

The declarations from three members of Local 139 employed by the defendant include the wage/fringe benefit rates in effect during the relevant periods (as stated in the CBA) and the number of hours each individual worked for which the defendant did not pay the contributions and administrative dues. Dkt. Nos. 23–25. Trevor Holzhueter averred that he was employed by the defendant from January through March of 2022 as a heavy equipment operator. Dkt. No. 23 at ¶1. Holzhueter averred that he "worked 330 hours in Classification 2 for projects located in Area II for which fringe benefits contributions and administrative dues were not paid to plaintiffs on [his] behalf." Id. at ¶3. According to the chart of wage and fringe benefit rates effective from June 1, 2021 through May 31, 2022, as included in the CBA, dkt. no. 12-2 at 2, this equates to 330 hours at a rate of $29.46.[2] Dkt. No. 23 at ¶¶2–3. Alex Spurley averred that he was employed by the defendant from January through March of 2022 as a heavy equipment operator. Dkt. No. 24 at ¶1. Spurley averred that he "worked 360 hours in Classification 2 for projects

---

[2] The chart does not specify that these rates are per hour. See Dkt. Nos. 23–25 at ¶2 (employee declarations); Dkt. No. 12-2 at 2 (CBA).

located in Area II for which fringe benefits contributions and administrative dues were not paid to plaintiffs on [his] behalf." Id. at ¶3. Based on the chart in the CBA, this equates to 360 hours at a rate of $29.46. Id. at ¶¶2–3. Thomas Pete averred that he was employed by the defendant in March of 2022 as a heavy equipment operator. Dkt. No. 25 at ¶1. Pete averred that he "worked 86 hours in Classification 2 for projects located in Area II for which fringe benefits contributions and administrative dues were not paid to plaintiffs on [his] behalf." Id. at ¶3. Based on the chart in the CBA, this equates to 86 hours at a rate of $29.46. Id. at ¶¶2–3. Pete also averred that the defendant failed to pay him "the required hourly wages for 86 hours of work in March, 2022." Id. at ¶4.

    The plaintiffs' motion for default judgment included another affidavit from Rita Becker, the fund administrator, who used these three declarations to calculate the total amounts of contributions, interest and delinquent payments assessments owed: "The Fund was able to ascertain which employees worked for Vision Utility and were able to obtain declarations from each of them declaring the number of hours worked and wages earned. As such, the Fund was able to calculate the amounts of contributions, interest and delinquent payments assessments owed." Dkt. No. 26 at ¶¶1, 5. Becker stated that she examined the declarations of Holzhueter, Spurley and Pete and "determined that Defendant owes contributions in the amount of **$11,251.73**, interest in the amount of **$1,359.69** and delinquent payment assessments in the amount of **$2,149.52**." Id. at ¶6 (emphasis in original). Attached to Becker's affidavit is a summary sheet showing the amounts due and her total calculations, which include a combined total of **$14,760.94** in contributions, interest and delinquent payments. See Dkt. No. 26-2. The plaintiffs' itemization of damages reflects these calculations. Dkt. No. 22 at 1.

As for attorneys' fees and costs, the plaintiffs provided two affidavits from their lawyers Cynthia Buchko, dkt. no. 27, and Laura Finnegan, dkt. no. 28. Buchko's affidavit includes a breakdown of tasks completed and time spent on the case, calculating that she expended 9.2 hours at a rate of $210 per hour for a total of $1,927 in attorneys' fees. Dkt. No. 27 at ¶2. Buchko also attests that the plaintiffs "have incurred reasonable and necessary costs in the amount of $530 in the filing of this lawsuit as well as service of the summons and complaint on defendant." Id. at ¶9. This reflects a total of $2,457 in attorneys' fees and costs from Buchko's affidavit. Id. at ¶10. Finnegan's affidavit also provides a breakdown of tasks completed and time spent on the case, calculating that 2.5 hours were expended at various rates for a total of $575.00 in attorneys' fees. Dkt. No. 28 at ¶¶2, 8. Together, these affidavits reflect a total of $3,032 in attorneys' fees and costs, which is reflected in the plaintiffs' itemization of damages. Dkt. No. 22 at 1. The court finds these fees and costs to be reasonable.

In sum, the following amounts of damages due the plaintiffs have been calculated with reasonable certainty:

| | |
|---|---:|
| Unpaid fringe benefit contribution | $11,251.73 |
| Delinquent payment assessments | $2,149.52 |
| Interest | $1,359.69 |
| Reasonable attorneys' fees and costs | $3,032.00 |
| Total amount | **$17,792.94** |

See Dkt. No. 22 at 1. The evidence provided by the plaintiffs sufficiently establishes these calculations and total amounts, so a hearing is unnecessary. See e360 Insight, 500 F.3d at 602 (stating a hearing to determine damages is not necessary if the claimed amount is "capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits").

### III. Conclusion

The court **GRANTS** the plaintiffs' motion for default judgment. Dkt. No. 20.

The court **ORDERS** that default judgment must be entered in favor of the plaintiffs and against the defendant in the total amount of **$17,792.94** for unpaid contributions, interest and delinquent payment assessments and reasonable attorneys' fees and costs.

The court **ORDERS** that this case is dismissed. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 23rd day of February, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**